# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIE LEE WIMBERLY,

        Defendant-Appellant.

UNPUBLISHED
October 20, 2015

No. 321490
Wayne Circuit Court
LC No. 13-003881-FC

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

A jury convicted defendant of two counts of assault with intent to commit murder, MCL 750.83, but acquitted him of an additional charge of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second habitual offender, MCL 769.10, to concurrent prison terms of 40 to 60 years for one of the convictions (relating to victim Brendon Charles) and 25 to 37-2/3 years for the other conviction (relating to victim Seylon Dudley). Defendant appeals as right. We affirm.

## I. BACKGROUND

Defendant was convicted of aiding or abetting the shooting assaults of Brendon Charles and Seylon Dudley during the early morning hours of January 1, 2013, in an apparent road-rage incident after Charles and Dudley left the MGM Grand Casino in Detroit. Charles and Dudley left the casino in a Range Rover driven by Charles. Defendant, who had also been at the casino, was driving a Ford Expedition with two passengers, one of whom was Steven Smith-Rush ("Rush"). After an altercation between the drivers of the two vehicles while leaving the casino, the Expedition followed the Range Rover onto the I-94 freeway, eventually pulled alongside the vehicle, and then multiple gunshots were fired from the Expedition into the Range Rover. Charles and Dudley were both struck by gunfire.

Defendant and Rush were arrested later in January 2013, but Rush was initially charged only with accessory after the fact. Charles was murdered the day before a joint preliminary examination for defendant and Rush was to be held on January 30, 2013. When the preliminary examination ultimately concluded in April 2013, defendant was bound over for trial on two counts of assault with intent to commit murder and one count of felony-firearm. The district court found insufficient credible evidence to add assault charges against Rush, but bound Rush over for trial on charges of accessory after the fact and giving a false statement to the police.

-1-

Rush later entered a guilty plea to the latter charge. Defendant testified at trial and admitted driving the Expedition when his passengers fired gunshots into the Range Rover, but argued that he was merely present in the vehicle, was unaware that his passengers intended to fire gunshots into the Range Rover, and did nothing to aid or assist the passengers in the shooting assault of the two victims. The prosecution presented evidence linking defendant to an attempt to bribe Charles if he did not testify at the preliminary examination, and linking him to Charles's murder the day before the scheduled preliminary examination. The jury convicted defendant of two counts of assault with intent to commit murder, but acquitted him of the felony-firearm charge.

## II. COUNSEL OF CHOICE

Defendant first argues that the trial court violated his Sixth Amendment right to retain counsel of his choice when it denied his motions to adjourn the trial to permit him to retain substitute counsel of his choice. Defendant's motions were brought three days before trial was scheduled to begin and on the first day of trial in March 2014. We disagree with defendant's challenge.

This Court reviews a trial court's decision affecting a defendant's right to retain counsel of choice and whether to adjourn trial for an abuse of discretion. *People v Akins*, 259 Mich App 545, 556; 675 NW2d 863 (2003). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). We review issues of constitutional law de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).

The Sixth Amendment affords a defendant a right to retain counsel of choice. *United States v Gonzalez-Lopez*, 548 US 140, 144; 126 S Ct 2557; 165 L Ed 2d 409 (2006); *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). But the right is not absolute. *Akins*, 259 Mich App at 557. The defendant's right to retain counsel of choice must be balanced against the public's interest in the prompt and effective administration of justice. *Aceval*, 282 Mich App at 387; *Akins*, 259 Mich App at 557. In *People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (2003), this Court observed:

> When reviewing a trial court's decision to deny a defense attorney's motion to withdraw and a defendant's motion for a continuance to obtain another attorney, we consider the following factors: (1) whether the defendant is asserting a constitutional right, (2) whether the defendant has a legitimate reason for asserting the right, such as a bona fide dispute with his attorney, (3) whether the defendant was negligent in asserting his right, (4) whether the defendant is merely attempting to delay trial, and (5) whether the defendant demonstrated prejudice resulting from the trial court's decision. [Citation omitted.]

In this case, defendant satisfied the first factor by asserting a constitutional right to retain counsel of his choice. But defendant did not establish a bona fide dispute with his retained counsel over trial strategy at the time of the motions, but rather expressed general dissatisfaction with defense counsel's performance and counsel's alleged lack of communication regarding the development of a general defense of innocence. Furthermore, considering that the trial proceedings were previously delayed because of a mid-trial defense request for a competency

examination, which the trial court granted, that further delay occurred as a result of the trial court allowing defendant's second retained attorney to enter an appearance as defendant's counsel of choice, and that defendant waited until just before trial to attempt to substitute his third counsel of choice, the trial court's conclusion that defendant was engaging in delay tactics was reasonable and found support in the record.

Under the circumstances, the trial court decision not to allow another adjournment for defendant to proceed with another retained attorney was not an abuse of discretion. Balancing defendant's right to counsel of his choice against the public interest in the prompt and efficient administration of justice, defendant's Sixth Amendment right to counsel of choice was not violated.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence was insufficient to convict him of assault with intent to commit murder because, at most, it only established that he was merely present as the driver of the Expedition at the time of the shooting assaults against Charles and Dudley by his gun-wielding passengers. We disagree.

Due process commands a judgment of acquittal in a criminal case where the evidence at trial is insufficient to sustain a conviction. *People v Lemmon*, 456 Mich 625, 633-634; 576 NW2d 129 (1998). We review de novo the issue regarding whether there was sufficient evidence to support a conviction. *People v Lueth*, 253 Mich App 670, 680; 660 NW2d 322 (2002). In reviewing the sufficiency of the evidence, this Court must view the evidence – whether direct or circumstantial – in a light most favorable to the prosecutor and determine whether a rational trier of fact could find that the essential elements of the crime were proved beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses. *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992). Circumstantial evidence and the reasonable inferences that arise from such evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). The prosecution need not negate every reasonable theory of innocence, but need only prove the elements of the crime in the face of whatever contradictory evidence is provided by the defendant. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). We resolve all conflicts in the evidence in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Assault with intent to commit murder is a specific intent crime. *People v Lipps*, 167 Mich App 99, 105; 421 NW2d 586 (1988). "The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005) (citations and quotation marks omitted). With respect to aiding or abetting, "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense."

MCL 767.39. A conviction under an aiding or abetting theory requires proof that "the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense." *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). "The phrase 'aids and abets' is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004). However, "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is not enough to make a person an aider or abettor; nor is mere mental approval, passive acquiescence or consent sufficient." *People v Turner*, 125 Mich App 8, 11; 336 NW2d 217 (1983); see also *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999).

Defendant does not dispute that there was sufficient evidence to establish that he was the driver of the Expedition, but argues that the evidence merely showed that he was present when his passengers fired gunshots into the Range Rover occupied by Charles and Dudley. Defendant argues that there was no evidence showing that he intended to aid or abet his passengers, or that he had an intent to kill Charles or Dudley. With respect to the intent to kill, it is well settled that such intent may be inferred from any facts in evidence. *Unger*, 278 Mich App at 223. "Because of the difficulty of proving an actor's state of mind, minimal circumstantial evidence is sufficient to establish a defendant's intent to kill." *Id.* In general, the intent to kill may be gleaned from the nature of the acts that constituted the assault, the temper or disposition of mind with which the acts were apparently performed, whether the means used would naturally produce death, use of a dangerous weapon, any declarations by the defendant, and all other circumstances calculated to throw light upon the intention with which an assault was made. *Brown*, 267 Mich App at 149 n 5; *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993). Of course, an aider and abettor's state of mind may also be inferred from all the facts and circumstances. *Carines*, 460 Mich at 757. Relevant factors include whether there existed a close relationship between the defendant and the principal, the defendant's actions in planning and executing the crime, and evidence of flight after the crime. *Id.* at 757-758.

Viewed in a light most favorable to the prosecution, the evidence established that the shooting occurred shortly after an encounter in which the Expedition driven by defendant cut off the Range Rover driven by Charles, which prompted Charles to make some facial gestures at defendant. According to Dudley, Charles also flashed a wad of money at defendant during this encounter. Thereafter, defendant followed the Range Rover vehicle. Charles indicated in a statement to a state trooper that the Expedition made a last minute lane change to enter I-94 behind the Range Rover. Dudley testified that the Expedition sped up and "got like nose hair close to us," and that the Expedition touched the driver's side of the Range Rover when gunshots were fired into the Range Rover. Testimony from Avantis Parker indicated that defendant later took steps to prevent Charles from testifying at the preliminary examination by making arrangements to try to give Charles money and to have him killed. A jury may infer a consciousness of guilt from evidence that a defendant threatened or bribed a witness. See *People v Sholl*, 453 Mich 730, 740; 556 NW2d 851 (1996); *People v Mock*, 108 Mich App 384, 389; 310 NW2d 390 (1981).

-4-

Although defendant asserts that he was merely present and had no knowledge that his passengers intended to fire gunshots into the Range Rover, the evidence that defendant, the person in control of the Expedition, suddenly changed directions to follow the Range Rover onto I-94 supports an inference that defendant entered the freeway with the specific intent to pursue the Range Rover. Further, given the testimony that defendant pulled alongside the Range Rover and then maneuvered his vehicle in a manner causing it to physically strike the Range Rover at the time the shots were fired, the jury could infer that defendant shared his passengers' intent to harm the occupants of the Range Rover. Moreover, Avantis Parker's testimony also allowed the jury to infer that defendant acted to prevent Charles from testifying because of defendant's consciousness of guilt for the charged offenses. Accordingly, considering all the facts and circumstances, the evidence was sufficient to enable the jury to find beyond a reasonable doubt that defendant intentionally pulled up to the driver's side of the Range Rover in order to enable his passengers to fire gunshots into the Range Rover, with the intent to kill the occupants. Thus, the evidence was sufficient to support defendant's convictions.

## IV.  GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that the jury's guilty verdicts are against the great weight of the evidence. This issue is unpreserved because defendant failed to raise it in a motion for a new trial in the trial court, *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011), and this Court previously denied defendant's motion to remand with respect to this issue, *People v Wimberly*, unpublished order of the Court of Appeals, entered January 30, 2015 (Docket No. 321490). An unpreserved challenge to the weight of the evidence is reviewed for plain error affecting substantial rights. *Cameron*, 291 Mich App at 617.

A verdict is against the great weight of the evidence only if the evidence preponderates so heavily against the verdict that allowing the verdict to stand would be a miscarriage of justice. *Id.* Defendant's great-weight argument is merely a restatement of his challenge to the legal sufficiency of the evidence. Defendant does not offer any additional support for his position that the jury verdict's is against the great weight of the evidence. As previously indicated, there was sufficient evidence to support the jury's verdict. Furthermore, the testimony against defendant did not contradict or defy physical facts and realities or laws of science, nor was the testimony against him patently incredible or inherently implausible. See *Lemmon*, 456 Mich at 643-644 (recognizing exceptional situations in which a verdict may be against the great weight of the evidence). Therefore, we reject this claim of error.

## V.  JURY INSTRUCTIONS

Next, defendant raises four claims of instructional error. We generally review claims of instructional error de novo. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). But a trial court's determination regarding whether a jury instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). An unpreserved claim of instructional error is reviewed for plain error affecting substantial rights. *People v Vaughn*, 491 Mich 642, 664-665; 821 NW2d 288 (2012).

An appellate court reviews jury instructions as a whole to determine if error requiring reversal occurred. *People v Wood*, 307 Mich App 485, 519; 862 NW2d 7 (2014). "The jury

instructions must include all elements of the charges offenses, and must not omit material issues, defenses, or theories that the evidence supports." *Id.* Even if the jury instructions are somewhat imperfect, reversal is not warranted if they fairly present the issues to be tried and sufficiently protect the defendant's rights. *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002).

## A. CONSCIOUSNESS OF GUILT

Defendant first argues that the trial court gave an erroneous jury instruction relating to the jury's consideration of the evidence that defendant attempted to bribe Charles or may have been involved in his murder to demonstrate defendant's consciousness of his guilt in this case.[1] Defendant complains that the instruction given by the trial court failed to specify that his alleged conduct did not prove his guilt, nor did it indicate that there may be other innocent reasons for the alleged conduct. Defendant argues that the court's instruction should have been modeled after M Crim JI 4.4, formerly CJI2d 4.4, concerning the use of flight as evidence of consciousness of guilt. Defendant alternatively argues that the court should have given M Crim JI 4.11, formerly CJI2d 4.11, concerning the limited, permissible use of evidence of a defendant's other crimes or improper acts.

Defense counsel did not challenge the substance of the trial court's instruction at trial, but only argued that the court should not give any instruction at all regarding the use of the evidence. Accordingly, defendant's present argument is not preserved for appeal. "[A]n objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground." *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Thus, review is limited to plain error affecting defendant's substantial rights. *Vaughn*, 491 Mich at 664-665.

Shortly before trial began in March 2014, MCR 2.512(D)(2) was amended to require a trial court to use the Model Criminal Jury Instructions where they are requested, applicable, and accurately state the law.[2] But a trial court is also authorized to give additional instructions not covered by the model instructions. MCR 2.512(D)(4). The "[a]dditional instructions, when given, must be must be patterned as nearly as practicable after the style of the model instructions and must be concise, understandable, conversational, unslanted, and nonargumentative." *Id.*

Defendant's reliance on M Crim JI 4.4 (concerning evidence of flight) is misplaced. While the flight instruction recognizes that there may be reasons for flight that are consistent with innocence, *People v Smelley*, 485 Mich 1023; 776 NW2d 310 (2010), defendant does not suggest, and the evidence did not show, any plausible innocent reason for the alleged conduct in

---

[1] We note that, with respect to Charles's murder, defendant was eventually convicted in the Washtenaw Circuit Court of first-degree murder, conspiracy to commit first-degree murder, witness intimidation, and felony-firearm. An appeal of those convictions is currently pending in this Court. Docket Nos. 322923 and 325763.

[2] Although the parties referred to and apparently used the former jury instructions at trial (CJI2d), we note that the former and current pertinent jury instructions are substantively the same.

-6-

this case, which involved an attempt to bribe Charles or to have him killed to prevent him from testifying in this case. In addition, the trial court's instruction made it clear that it was up to the jury to determine (1) "whether the defendant did, in fact, try to pay a witness not to testify and/or subsequently played a role in the murder of that witness," and (2) the weight, if any, to be given to the evidence. Moreover, the court did not suggest that the jury was required to find that the evidence, if believed, demonstrated defendant's consciousness of guilt, but rather instructed that if the jury found that defendant committed one of the alleged acts, it "may" use that as evidence of consciousness of guilt. The court's instruction left to the jury the tasks of determining whether defendant actually committed the alleged acts and what weight, if any, to give the evidence. Defendant also argues that the trial court should have used M Crim JI 4.11(2)(g) to explain the purpose of the evidence regarding the bribery and murder of Charles, but the substance of the instruction actually given by the trial court achieved that purpose because it explained the permissible use of the evidence to show consciousness of guilt. To the extent that defendant suggests that the trial court should have simply allowed the prosecutor to address this issue in closing argument, as suggested by defense counsel, his argument provides no basis for relief. The fact that the evidence was a permissible subject of closing argument does not mean that it was improper to instruct the jury regarding the permissible use of the evidence. A trial court may instruct the jury on the limited purpose of evidence. MRE 105. For these reasons, there was no plain error.

## B. ACCOMPLICE TESTIMONY

Second, defendant argues that the trial court erred by failing to read the cautionary instruction on accomplice testimony in former CJI2d 5.6, now M Crim JI 5.6, with respect to Avantis Parker's testimony. We find no support in the record for defendant's claim that defense counsel requested this instruction. Rather, the record indicates that defense counsel requested former CJI2d 5.13, now M Crim JI 5.13, based on Avantis's testimony that he hoped to receive some benefit at his sentencing for his second-degree murder conviction relating to Charles's murder because of his testimony in this case. Thus, this issue is not preserved with respect to defendant's argument based on M Crim JI 5.6.

Regardless, we find no error, plain or otherwise, with respect to the failure to give an instruction based on M Crim JI 5.6. Because Avantis was not an alleged accomplice to the charged assaults on Charles and Dudley, M Crim JI 5.6 was not applicable to his testimony. See *People v Ho*, 231 Mich App 178, 188-189; 585 NW2d 357 (1998) (trial court's failure to read CJI2d 5.5 and 5.6 regarding accomplice testimony was not error where the witnesses were not accomplices as to the crimes for which the defendant was on trial). In addition, the trial court instructed the jury on factors to consider when evaluating a witness's credibility, including factors such as a witness's bias, prejudice, or personal interest in how the case is decided, and whether the witness has "any special reason to tell the truth or any special reason to lie. As a whole, the jury instructions fairly presented the framework for addressing witness credibility issues and sufficiently protected defendant's rights. Therefore, defendant has not established a plain error. To the extent that defendant argues that M Crim JI 5.6 would have been appropriate based on the testimony of another prosecution witness who gave limited testimony at trial pursuant to an immunity agreement, defendant's cursory argument is insufficient to establish a plain error.

## C.  INCONSISTENT STATEMENTS

Defendant also argues that the trial court improperly read former CJI2d 4.5, now M Crim JI 4.5, regarding the use of a witness's prior inconsistent statement, without explaining to the jury which of Dudley's prior statements could be used only for impeachment purposes and which could be considered as substantive evidence.  The record reflects that the trial court granted defense counsel's request for the instruction, and defense counsel affirmatively expressed his satisfaction with the instructions as read by the trial court to the jury.  Therefore, defendant has waived this claim of instructional error.  *Kowalski*, 489 Mich at 504-505.  Even if the issue was only forfeited, and not waived, defendant would not be entitled to appellate relief unless he can establish an outcome-determinative plain error.  *Vaughn,* 491 Mich at 665.  Defendant does not explain how any prior inconsistent statement, if considered as substantive evidence, was prejudicial.  Accordingly, defendant has not met his burden of establishing an outcome-determinative error.

## D.  DURESS

Lastly, we reject defendant's argument that the trial court erred by failing to sua sponte instruct the jury on the defense of duress in accordance with former CJI2d 7.6, now M Crim JI 7.6.  Defendant argues that a duress instruction is supported by his testimony that he continued to drive the Expedition after the shooting because he felt under duress.  But duress is not a defense to assault with intent to commit murder.  *People v Henderson*, 306 Mich App 1, 7; 854 NW2d 234 (2014).  Furthermore, the alleged duress was used to explain defendant's conduct *after* the charged assaults.  It was not offered to explain defendant's alleged participation in the actual assaults.  Accordingly, defendant's testimony did not support a duress instruction.

## VI.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also raises several claims of ineffective assistance of counsel.  Because defendant failed to raise these claims in a motion for a new trial or request for a *Ginther*[3] hearing, and because this Court previously denied defendant's motion to remand, our review of the claims is limited to errors apparent from the record.  *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008); *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).  Although defendant alternatively requests that this Court remand the case for a *Ginther* hearing, because defendant has not set forth any additional facts to be established on remand, such relief is not warranted.  See MCR 7.211(C)(1)(a)(ii); *People v Chapo*, 283 Mich App 360, 369; 770 NW2d 68 (2009); *People v Williams*, 275 Mich App 194, 200; 737 NW2d 797 (2007).

Ineffective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo.  *LeBlanc*, 465 Mich at 579.  To establish ineffective assistance of counsel, defendant bears the burden of showing both deficient performance and prejudice.  *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001).  Counsel is strongly presumed to have rendered adequate assistance and to have made all

---

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

significant decisions in the exercise of reasonable professional judgment. *Vaughn*, 491 Mich at 670. Defendant must establish that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* at 669.

Defendant argues that defense counsel was ineffective by failing to discuss trial strategy with him. He argues that this deficiency is reflected in defense counsel's opening statement and that it affected his trial testimony by forcing him to deny certain things that were asserted in defense counsel's opening statement.

Where a defendant is represented by counsel, matters of trial strategy are entrusted to defense counsel. *People v Traylor*, 245 Mich App 460, 463; 628 NW2d 120 (2001). But defense counsel's strategy must be sound, and the decisions reached must be objectively reasonable. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Counsel has a duty to make reasonable investigations or to reasonably decide that particular investigations are unnecessary. *Id.*; see also *People v Ackley*, __ Mich __, __; __ NW2d __ (2015) (Docket No. 149479); slip op at 7. Defense counsel must prepare, investigate, and present all substantial defenses. *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). But regardless of whether defense counsel decides that defendant should not testify and advises defendant of this decision, the ultimate decision regarding whether to testify rests with the defendant. *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011).

The purpose of an opening statement is to make a full and fair statement of that party's case and the facts the party intends to prove. MCR 2.507(A). The scope of opening statement is among the strategic decisions made by defense counsel at trial. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The decision whether to concede certain matters at trial, including elements of the charged offenses, is also a matter of trial strategy. *Chapo*, 283 Mich App at 369-370.

The nature and scope of defense counsel's pretrial investigation is not apparent from the record. However, defense counsel would have had access to the same information that was available to defendant's first attorney. The record also indicates that defendant testified at trial against the advice of counsel. Defense counsel's opening statement reflects a strategy of attacking the sufficiency and quality of the prosecution's evidence. Defense counsel argued that the prosecutor would not be able to prove that the gunshots were fired from the same vehicle that cut off the Range Rover outside the casino, *but further argued* that even if it was the same vehicle, the prosecutor would not be able to show that defendant did anything more than drive the vehicle. Defense counsel also asserted that the prosecutor was going to offer Avantis Parker's testimony as a "desperate" measure, because the prosecutor knew that proof beyond a reasonable doubt was lacking, but that Parker was a drug dealer, armed robber, and murderer who had no credibility.

Although there are times when a defense attorney serves the client's interest by making a concession in opening statement, *People v Wise*, 134 Mich App 82, 98; 351 NW2d 255 (1984), defendant has failed to establish that defense counsel engaged in unsound trial strategy by proposing to hold the prosecution to its burden of proof, even if that strategy was not specifically discussed with defendant before trial. Although defendant asserts that defense counsel's opening

statement put him in a position of having to admit that certain statements were not true, defendant cites no factual support for this argument. A defendant may not leave it to this Court to search for factual support for a claim. *People v Petri*, 279 Mich App 407, 413; 760 NW2d 882 (2008).

In addition, defense counsel appropriately modified his strategy in closing argument to conform to defendant's testimony that he was merely present. Counsel asserted that defendant could have declined to testify and held the prosecution to its obligation to prove its case, but explained that defendant "couldn't sit there and let you labor under the assumption that he was not there. He needed to tell you what happened." Considering counsel's strategy in light of the record as a whole, defendant has not overcome the presumption that counsel's strategy was objectively reasonable, or shown that he was prejudiced by the strategy employed. The fact that a strategy does not work does not establish ineffective assistance of counsel. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004).

We also reject defendant's argument that defense counsel's opening statement was ineffective because it opened the door to Parker's testimony regarding defendant's involvement in Charles's murder, thereby leading to the consciousness-of-guilt instruction. However, the record discloses that regardless of defense counsel's opening statement, the prosecutor intended to use Parker's testimony to establish, at a minimum, defendant's involvement in trying to bribe Charles to keep him from testifying against defendant. That evidence alone would have supported a consciousness-of-guilt instruction. In addition, it is apparent from defense counsel's opening statement that he wanted to show Parker's involvement in Charles's murder to further attack his credibility. Counsel later elicited testimony from Parker that he hoped that his testimony in this case would help him at sentencing for his second-degree murder conviction related to Charles's murder. Counsel's decision to pursue that subject matter was clearly a matter of trial strategy, and, while perhaps a close call, defendant has not overcome the strong presumption that counsel exercised reasonable professional judgment. *Vaughn*, 491 Mich at 670. Therefore, defendant is not entitled to a new trial based on this claim of ineffective assistance of counsel.

Defendant also argues that defense counsel was ineffective for not requesting a duress instruction. As previously indicated, defendant was not entitled to a duress instruction. Counsel is not ineffective for failing to make a meritless request. *Unger*, 278 Mich App at 255-257.

Lastly, defendant argues that defense counsel's performance was deficient because he did not ask the trial court to reread the aiding and abetting jury instructions in response to a jury question during deliberations. We disagree. Counsel did not object to having the court reread the aiding and abetting instructions, but appropriately observed that it would not answer the jury's question. The jury only inquired whether there is a difference between a person who is guilty as an aider or abettor, or as a direct participant. Defendant does not challenge the trial court's response, which accurately informed the jury that there is "no difference" between the two. The jury's limited question did not express confusion regarding what constitutes aiding or abetting in the first instance. Defense counsel was not ineffective for not insisting that the trial court reread jury instructions that would not have specifically answered the jury's question.

## VII. SENTENCING

Defendant next argues that he is entitled to resentencing under *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), because the trial court relied on facts not admitted by defendant or found by the jury to score the offense variables (OVs) of the sentencing guidelines. Because defendant failed to raise this issue at sentencing, our review is limited to plain error affecting defendant's substantial rights. *People v Lockridge*, __ Mich __, __; __ NW2d __ (2015) (Docket No. 149073); slip op at 30.

In *Lockridge*, __ Mich at __; slip op at 1-2, our Supreme Court held that Michigan's sentencing guidelines are constitutionally deficient under *Alleyne* to the extent that "the guidelines *require* judicial fact-findings beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e. the 'mandatory minimum' sentence under *Alleyne*." To remedy this violation, the Court held that a guidelines range calculated in violation of *Alleyne* is advisory only. *Id.* at __; slip op at 2. In this case, however, the trial court was ultimately not constrained by any mandatory minimum sentence under the guidelines for defendant's conviction of assault with intent to murder Charles, because the trial court departed upward from the guidelines. Therefore, defendant is unable to establish that he was prejudiced by any judicial fact-finding in scoring the OVs, and resentencing or a remand is not warranted. *Id.* at __; slip op at 32-33 n 31. And while the trial court imposed a sentence within the guidelines range for the conviction of assault with intent to murder Dudley, this lesser sentence is to be served concurrently with defendant's sentence for the assault against Charles. Therefore, because any judicial fact-finding in determining the guidelines range for the conviction involving Dudley will not subject defendant to a longer period of incarceration, any error will not affect defendant's substantial rights and resentencing or a remand is not warranted. *People v Kimble*, 470 Mich 305, 312-313; 684 NW2d 669 (2004).

Defendant also challenges the trial court's departure sentence for the offense against Charles on the ground that the departure was based on the trial court's belief that defendant was involved in the murder of Charles. Defendant argues that the upward departure for that reason violates his double jeopardy protections because he would be subject to a life sentence if he was convicted of the murder charge.[4] We disagree.

The prohibition against double jeopardy in US Const, Am V, and Const 1963, art 1, § 15, protects individuals against successive prosecutions and multiple punishments for the same offense. *People v Miller*, __ Mich __, __; __ NW2d __ (2015) (Docket No. 149502); slip op at 3-4. To the extent that defendant relies on the protection against multiple punishments for the same offense, we find no support for his claim because this protection is designed to confine sentences to limits established by the Legislature. *Id.* at __; slip op at 4. "A sentencing court may consider the facts underlying uncharged offenses, pending charges, and acquittals." *People*

---

[4] Again, defendant has now been convicted of first-degree murder and other offenses related to Charles's murder.

*v Parr*, 197 Mich App 41, 46; 494 NW2d 768 (1992). In *People v Gibson*, 219 Mich App 530, 535; 557 NW2d 141 (1996), this Court held:

> While we acknowledge that the Double Jeopardy Clauses of the United States and Michigan Constitutions protect against multiple punishment for the same offense, we conclude that the score a defendant receives on an offense variable is not a form of punishment.
>
> . . .
>
> Because the guidelines are merely a tool for assessing the proper punishment, they are not, in and of themselves, a form of punishment. Accordingly, we conclude that the scoring of the guidelines does not implicate double jeopardy issues.

By analogy, we conclude that the trial court's upward departure from the guidelines on the basis of defendant's perceived involvement in Charles's murder does not implicate double jeopardy concerns.

## VIII. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se Standard 4 brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, none of which require appellate relief.

## A. TRIAL COURT ERRORS

Initially, defendant raises several claims of trial court error. He first argues that the trial court erred in admitting Charles's out-of-court statements and pretrial identification. Defendant contends that this evidence was not admissible under MRE 804(b)(6) and that its admission violated his constitutional right of confrontation. We disagree.

We review a preserved evidentiary issue for an abuse of discretion. *Unger*, 278 Mich App at 216. We review constitutional issues de novo. *LeBlanc*, 465 Mich at 579. A trial court may determine preliminary questions of fact relating to the admissibility of evidence. *People v Burns*, 494 Mich 104, 117 n 39; 832 NW2d 738 (2013). In making its determination, the trial court is not bound by the Rules of Evidence, except for privileges. MRE 104(a); *People v Barrett*, 480 Mich 125, 137; 747 NW2d 797 (2008). The proponent of disputed evidence has the burden of establishing foundational elements of fact by a preponderance of the evidence. *In re Brock*, 193 Mich App 652, 669; 485 NW2d 110 (1992), rev'd on other grounds 442 Mich 101 (1993).

The Confrontation Clause only applies to statements used as substantive evidence at trial. *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012). One of its core protections is to preclude admission of hearsay evidence that is testimonial in nature unless the declarant appears at trial or the defendant had a prior opportunity for cross-examination. *Id.* at 697-698. But forfeiture by wrongdoing is a recognized exception to the Sixth Amendment's right to cross-examine adverse witnesses. *Burns*, 494 Mich at 113-114. The specific intent necessary to apply that exception has been incorporated into the hearsay exception in MRE 804(b)(6). *Id.* at 113.

-12-

"To admit evidence under MRE 804(b)(6), the prosecution must show by a preponderance of the evidence that: (1) the defendant engaged in or encouraged wrongdoing; (2) the wrongdoing was intended to procure the declarant's unavailability; and (3) the wrongdoing did procure the unavailability." *Id.* at 115.

In this case, defense counsel asked the trial court to reconsider its earlier ruling to admit Charles's statements and identification of defendant under the forfeiture rule on the ground that the witness on whom the prosecutor relied to establish the foundation for the evidence had changed from Sophie Peak to Parker, because Peak had offered perjured testimony. Defense counsel did not dispute that Parker's testimony at defendant's preliminary examination in the murder case was sufficient to establish the foundational elements to admit Charles's pretrial statements in this case under the forfeiture by wrongdoing rule, but questioned Parker's credibility and asked the trial court to make a ruling under the preponderance of the evidence standard. To the extent that the trial court erred by declining to reconsider the admissibility of the evidence based on the change in foundational facts, reversal is not warranted because the trial court reached the right result by allowing the evidence. *People v Goold*, 241 Mich App 333, 342 n 3; 615 NW2d 794 (2000). The court was made aware of the change in foundation for admitting the evidence, the new foundational basis for admitting the evidence under the forfeiture by wrongdoing rule—Parker's testimony—was sufficient to support admission of the evidence under that rule, and defendant raised only a credibility challenge to Parker's testimony. Even if the trial court should have made a credibility determination, it is apparent that it deemed Parker's allegations as credible because it relied on that evidence to justify a departure from the sentencing guidelines range. Therefore, defendant has not established that the trial court's failure to explicitly consider Parker's credibility when refusing to reconsider its earlier ruling requires reversal.

Defendant also argues that the trial court erred in allowing the prosecutor to introduce Parker's testimony concerning defendant's involvement in the attempted bribery and subsequent murder of Charles. Defendant argues that this evidence was not relevant under MRE 401 and was unfairly prejudicial under MRE 403. As previously indicated, the evidence was relevant because it was probative of defendant's consciousness of guilt for the charged offenses. In addition, while not amounting to ineffective assistance, defense counsel opened the door to evidence regarding defendant's involvement in Charles's murder in his opening statement. Accordingly, there was no plain evidentiary error. *Vaughn*, 491 Mich at 664-665; *Carines*, 460 Mich at 763. We also reject defendant's argument that the trial court should have corrected defense counsel's opening statement by enforcing its earlier ruling in limine to limit Parker's testimony only to the alleged bribery. A trial court may modify its evidentiary rulings as events at trial unfold. *People v Boyd*, 470 Mich 363, 369; 682 NW2d 459 (2004). Defense counsel's strategy decision to open the door to the evidence to further attack Parker's credibility justified modification of the trial court's earlier ruling.

Next, there is no merit to defendant's argument that the trial court was obligated to correct the prosecutor's alleged misconduct in opening statements when making statements of fact to infer that defendant participated in the charged crimes. Although a trial court has a duty to control the proceedings, MCL 768.29, the prosecutor's challenged remarks fell within the scope and purpose of an opening statement, MCR 2.507(A). And the facts recited by the prosecutor and later introduced at trial supported an inference that defendant was not merely

-13-

present, but rather was involved in the commission of the charged crimes. Accordingly, the prosecutor's statements were not improper. *People v Roscoe*, 303 Mich App 633, 649; 846 NW2d 402 (2014). Furthermore, the trial court instructed the jury that the "[l]awyer's statements and arguments are not evidence," which was sufficient to protect defendant's substantial rights. Jurors are presumed to have followed the court's instructions. *Unger*, 278 Mich App at 235.

Defendant also argues that the trial court violated his right of confrontation when it excused Detective Joseph White before defense counsel finished cross-examination. Because there was no defense objection when Detective White was excused, this issue is unpreserved. See *Carines*, 460 Mich at 762 n 7. Considering the absence of an objection and the fact that the trial court later ruled that Detective White could be recalled for further testimony if desired, we find neither a plain error, nor any basis for concluding that defendant's substantial rights were affected. *Id.* at 763.

Lastly, having found no actual errors by the trial court, we reject defendant's claim that the cumulative effect of the trial court's errors deprived defendant of a fair trial. *People v Bahoda*, 448 Mich 261, 292 n 64; 531 NW2d 659 (1995); *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001).

## B. PROSECUTORIAL MISCONDUCT

Defendant raises several issues involving the prosecutor's conduct, none of which were preserved for appeal. Therefore, our review of these issues is limited to plain error affecting defendant's substantial rights. *Vaughn*, 491 Mich at 664-665.

Defendant first challenges the prosecutor's charging decision. He argues that his mere presence during the shooting did not justify charging him with assault with intent to commit murder. "The prosecutor has discretion to bring any charges supported by the evidence." *People v Nichols*, 262 Mich App 408, 415; 686 NW2d 502 (2004). "That discretion is abused only if a choice is made for reasons that are 'unconstitutional, illegal, or ultra vires[,]' " and we "thus review a charging decision under an 'abuse of power' standard, questioning whether a prosecutor has acted in contravention of the constitution or the law." *People v Barksdale*, 219 Mich App 484, 488; 556 NW2d 521 (1996) (citation omitted). We previously determined that the trial evidence was sufficient to support defendant's two convictions for assault with intent to commit murder. Although defendant was also charged with possession of a firearm during the commission of a felony, and acquitted of that charge, considering the evidence of the multiple gunshots and the evidence supporting defendant's involvement in the offense, the prosecution's decision to charge defendant with felony-firearm was not plain error. There was no abuse of power, given that the prosecution did not act in contravention of the constitution or the law.

With regard to defendant's next claim concerning former Michigan State Detective Sergeant Greenway's February 12, 2013 interview of Dudley, we find no record support for defendant's claim that Dudley identified defendant in a photographic lineup. To the contrary, Detective Kevin Nance testified at trial that the photographic lineup shown to Dudley did not include defendant's photograph. We therefore reject defendant's unpreserved claim of prosecutorial misconduct premised on an alleged suggestive photographic lineup.

For the reasons addressed in part VIII(A) of this opinion, we also reject defendant's argument that the prosecutor improperly obtained a conviction by making statements of fact in opening statement that were not supported by the evidence.

In addition, we find no support for defendant's argument that the prosecutor used a false identification of him by Dudley at trial to obtain a conviction. Although the district court found that Dudley's identification testimony at defendant's preliminary examination lacked credibility, the jury was the ultimate trier of fact. *People v Northey*, 231 Mich App 568, 575; 591 NW2d 227 (1998); *People v Laws*, 218 Mich App 447, 452; 554 NW2d 586 (1996). Moreover, considering the other trial evidence, including defendant's admission in his own testimony that he was the driver of the Expedition, Dudley's identification testimony clearly was not necessary for the prosecution to obtain a conviction. Therefore, we find neither plain error nor prejudice. The prosecutor did not knowingly use false testimony to obtain a conviction. See generally *People v Smith*, __ Mich __, __; __ NW2d __ (2015) (Docket No. 148305); slip op at 7; *People v Lester*, 232 Mich App 262, 276-277; 591 NW2d 267 (1998), overruled on other grounds *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014).

We also reject's defendant's argument that the prosecutor improperly introduced Charles's 911 call to elicit sympathy from the jury. The call was relevant because it had a tendency to make it more probable than not that the incident occurred in the manner claimed by Charles and Dudley. MRE 401. It tended to show that Charles and Dudley were on the side of the freeway after they were shot and that they were in need of immediate assistance for their gunshot injuries. It helped explain why they were gone when the state police arrived at their vehicle. Although the call also indicated that Charles was in a heightened emotional state, that did not render the evidence substantially more prejudicial than probative, MRE 403, particularly considering the trial court's instruction to the jury, which the jury is presumed to have followed, that it was not to let sympathy or prejudice influence its decision. *Unger*, 278 Mich App at 235. Therefore, there was no plain error affecting defendant's substantial rights. *Vaughn*, 491 Mich at 664-665.

Defendant also argues that the prosecutor introduced Parker's testimony for the sole purpose of introducing evidence that Charles was murdered and that defendant was charged with his murder. As discussed previously, defense counsel opened the door to this evidence. Although defense counsel used the evidence to attack Parker's credibility, the evidence was also probative of defendant's consciousness of guilt. Accordingly, there was no plain error. See *People v Dobek*, 274 Mich App 58, 72; 732 NW2d 546 (2007) (a prosecutor's good-faith efforts to admit evidence does not constitute misconduct).

Lastly, because defendant has failed to establish any actual misconduct by the prosecutor, we reject his argument that the cumulative effect of the prosecutor's misconduct requires a new trial. *Bahoda*, 448 Mich at 292 n 64; *Knapp*, 244 Mich App at 388.

## C. SUFFICIENCY OF THE EVIDENCE

As previously discussed in section III, the evidence was sufficient to support defendant's convictions of assault with intent to commit murder.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant presents additional claims of ineffective assistance of counsel in his Standard 4 brief. Because these claims were not raised in the trial court and this Court denied defendant's pro se motion to remand, *People v Wimberly*, unpublished order of the Court of Appeals, entered April 29, 2015 (Docket No. 321490), our review of the claims is limited to errors apparent from the record. *Horn*, 279 Mich App at 38; *Davis*, 250 Mich App at 368.

We find no merit to defendant's argument that defense counsel was ineffective for failing to move to suppress Dudley's in-court identification because it was tainted by a suggestive photographic lineup. As previously indicated, the record discloses that defendant's photo was not included in the photographic lineup. Counsel was not required to file a futile pretrial motion. *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). And considering that the jury was ultimately responsible for determining Dudley's credibility, *Law*, 218 Mich App at 452, defense counsel was not ineffective for failing to move to suppress Dudley's in-court identification based on the district court's assessment of her credibility at the preliminary examination. In addition, Dudley's identification was not necessary to sustain defendant's convictions, because other evidence, including defendant's own admission that he was the driver of the Expedition, established his identity.

We also reject defendant's argument that defense counsel was ineffective because he failed to challenge the district court's bindover decision at the preliminary examination. The purpose of a preliminary examination is to determine if a crime was committed and whether there is probable cause to believe that the defendant committed the crime. *Law*, 218 Mich App at 451-452. The district court was clearly aware of the "mere presence" issue when rendering its decision to bind defendant over for trial on charges of assault with intent to commit murder. Because there was sufficient evidence to support the bindover decision, counsel was not ineffective for failing to move to quash or dismiss those charges. *People v Darden*, 230 Mich App 597, 605; 585 NW2d 27 (1998).

Defendant has also failed to establish that defense counsel was ineffective for failing to move to suppress evidence of the 911 call made by Charles at the scene of the shooting. As previously indicated, the evidence was not inadmissible. Counsel was not required to make a futile objection. *Strickland*, 293 Mich App at 398. Similarly, defendant has failed to establish that defense counsel was ineffective for not moving to suppress Parker's testimony, which was relevant to show defendant's consciousness of guilt. Further, as previously indicated, defendant has not overcome the presumption that defense counsel opened the door to the evidence regarding Charles's murder as a matter of sound trial strategy. To the extent that defendant argues that defense counsel should have moved for a mistrial after opening the door to this evidence, his argument is without merit because counsel cannot be deemed ineffective for failing to move for a mistrial based on his own strategy decision.

Next, defendant complains that defense counsel did not seek to further cross-examine Detective White after the trial court indicated that he could be recalled as witness. Decisions regarding whether to call or how to question a witness are presumed to be matters of strategy. *Horn*, 279 Mich App at 39. Because defendant fails to explain how further questioning could have aided his case, this claim of ineffective assistance of counsel must fail.

Defendant also argues that defense counsel was ineffective for failing to investigate and produce the results of drug and alcohol testing on the victims, failing to investigate and produce 911 phone calls made by uninvolved eyewitness, failing to investigate and produce phone records, and failing to investigate and produce "alibi" witnesses. These arguments fail because defendant has not shown that the alleged evidence actually exists. *Carbin*, 463 Mich at 600.

In addition, after reviewing the affidavits of the alleged "alibi" witnesses that were filed by defendant in support of his motion to remand, we conclude that remand for a *Ginther* hearing is not warranted because we are not persuaded that the affidavits establish a reasonable probability that the result of the trial would have been different if the witnesses had testified at trial consistent with their affidavits. None of the affiants could have supported an alibi defense because they do not place defendant elsewhere than at the scene of the shooting. *People v McGinnis*, 402 Mich 343, 345; 262 NW2d 669 (1978). The affidavits of Tisha Austin and Lawrence Mathews might have corroborated portions of defendant's trial testimony regarding his version of the circumstances of the shooting. But Austin's averments about her phone conversation with defendant while he was driving the Expedition are not substantial enough to demonstrate a reasonable probability of a different outcome. Apart from the fact that her relationship with defendant affected her credibility, Austin was not an eyewitness and would not be able to explain how the vehicles could have become stuck together during the shooting, and then become unstuck as defendant claimed in his testimony. And while Mathews averred that he fired the gunshots at the Range Rover, the prosecutor's aiding and abetting theory did not require proof that defendant was a shooter. In addition, defense counsel could not have compelled Mathews to testify, see *People v Giacalone*, 399 Mich 642, 645; 250 NW2d 492 (1977), and Mathews did not indicate in his affidavit that he would have been willing to incriminate himself by testifying to the alleged facts at the time of defendant's trial.

With respect to defense counsel's performance at sentencing, defendant's argument is, in substance, a challenge to the trial court's decision denying counsel's motion to withdraw. The appointment of substitute counsel is warranted only upon a showing of good cause and where substitution would not unreasonably disrupt the judicial process. *Traylor*, 245 Mich App at 462. Although retained counsel expressed disinterest in advocating for defendant at sentencing, he agreed to do so. Defendant has failed to establish that the trial court abused its discretion in denying the motion to withdraw. *Id.*

Lastly, defendant argues that defense counsel was ineffective for failing to move to correct an invalid sentence, but fails to identify any basis for finding his sentences invalid. Accordingly, this claim must fail.

Affirmed.


/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy